UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BRITTNEY ECHOLS,**

        **Plaintiff,**                   **CIVIL ACTION NO. 18-cv-12386**

        **v.**                              **DISTRICT JUDGE ROBERT H. CLELAND**

**COMMISSIONER OF**              **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Brittney Echols seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 17).  Plaintiff has also filed an Answer to Defendant's Motion for Summary Judgment.  (Docket no. 18.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 17) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income on September 24, 2015, alleging that she has been disabled since December 1, 2012, due to a traumatic brain injury, attention deficit hyperactivity disorder (ADHD), depression, "other mental conditions," and back pain. (TR 15, 86-87, 166-76, 205.)  The Social Security Administration denied Plaintiff's claims on February 29, 2016, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ). (TR 62-87, 104-05.)  On April 10, 2017, Plaintiff appeared with a representative and testified at a hearing before ALJ Donald G. D'Amato. (TR 36-61.)  The ALJ subsequently issued an unfavorable decision on August 22, 2017, and the Appeals Council declined to review the ALJ's decision. (TR 1-6, 15-31.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 12 at 7-12) and the ALJ (TR 21-30) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony; Plaintiff's summary is primarily focused on the facts related to her headaches.  Defendant adopts the facts as stated in the ALJ's decision. (Docket no. 17 at 4.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record.  Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

**IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 1, 2012, and that Plaintiff suffered from the following severe impairments: history of patella fracture, liver laceration, right wrist fracture, left pneumothorax, and closed head injury secondary to motor vehicle accident in 2012; polyneuropathy; multifactorial headache etiology: migraines, tension headaches, and medication overuse headaches; patellofemoral stress syndrome, left knee; lumbago; cognitive impairment; bipolar 1 disorder; generalized anxiety disorder; post-traumatic stress disorder (PTSD); ADHD, inattentive type; recurrent cannabis abuse; and history of learning disability. (TR 17-18.) Additionally, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 18-20.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform work that is unskilled with one-, two-, or three-step instructions in an non-fast-rate production environment, defined as involving no conveyor belt or assembly line work; job responsibilities may be learned by demonstration and should require no more than occasional computer use; cannot function as a member of a discrete team and contact with coworkers and supervisors is largely superficial; cannot be in direct interactive contact with the public; requires a "low stress" environment, defined as having only occasional changes in the work setting; can lift and/or carry 5 pounds frequently and 10 pounds occasionally; can stand and/or walk with normal breaks for about 2 hours in an 8-hour workday but can do so for only 15 minutes at one time; can sit with normal breaks for about 6 hours in an 8-hour workday, but can do so for only 15 minutes at one time; can perform pushing and pulling motions with the upper and lower extremities within the aforementioned weight restrictions for not more than 2/3 of an 8-hour workday; can perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching for not more than 2/3 of an 8-hour workday; needs to avoid hazards in the workplace such as moving machinery and unprotected heights . . . ; needs to avoid frequent direct exposure to sunlight or frequent exposure to loud noises; job responsibilities do not include handheld power or vibrating tools; needs to be restricted to a work environment with stable temperatures, stable humidity, and good ventilation; can occasionally climb stairs with handrails, balance, stoop, crouch, kneel, and crawl, but needs to avoid climbing ladders, scaffolds, and ropes;

> and requires work that, in addition to any regularly-scheduled breaks, allows the claimant to be off task up to 10% per 8-hour workday due to the symptoms from her impairments and/or the ancillary effects of treatment for such impairments.

(TR 21-29.) Subsequently, in reliance on a vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 30-31.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 1, 2012, through the date of the decision. (TR 15, 31.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide

the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial

evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because the ALJ's assessment of Plaintiff's allegations regarding the frequency and severity of her headaches is not supported by substantial evidence. (Docket no. 12 at 13-17.) The ALJ assessed Plaintiff's headaches as follows:

> First, the objective evidence and treatment history are not fully consistent with the claimant's allegations concerning the frequency and severity of her purported headaches. The undersigned notes that a CT of the brain was normal (4F/26). Furthermore, despite her claims of frequent incapacitating headaches that render her bedridden in a quiet area, objective observations on repeated clinical examinations did not reveal her to be in any acute distress nor did they show any focal abnormalities, even when she visited the emergency room for treatment of acute headaches (see, e.g., 2F/2-3; 4F/23; 8F/8, 12, 23; 9F/5, 30-31, 41, 47).

6

> Additionally, the claimant has had only conservative treatment and has a pattern of non-compliance with treatment recommendations. For example, after attempting pharmacological [sic] and reporting that she could not tolerate Topamax or Imitrex, she expressed a desire to use marijuana exclusively to treat her headaches (4FD/19). Approximately six months later, she visited a neurologist for further evaluation and care (2F). This was her only encounter with a specialist. He advised that the claimant participate in physical therapy (2F/4; 4F/27), but the claimant failed to follow through with this recommendation (4F/7). She did visit the emergency room on several occasions for complaints of head pain, including in December 2013 (13F/12); twice in the days and weeks following her trip-and-fall down stairs in July 2015 (9F/30-31, 66-67); once after hitting her head while putting her child in a car in August 2015 (9F/40-41); and once in April 2016 for a headache with sinusitis and ear infection (9F/46-48). These visits were related to acute injuries, not her allegedly disabling daily headaches. The undersigned also notes that the claimant was never admitted for hospitalization due to headaches. Furthermore, as noted above, she did not seek any specialized treatment other than the one neurological evaluation in February 2015 where she failed to participate[] in physical therapy as advised for treatment of her headaches (2F).

(TR 24.)

Plaintiff argues that the ALJ impermissibly relied on the objective evidence to discount her allegations. She argues that migraines "are not traced easily to an objective medical condition," so "while medical imaging may be able to capture physical changes or abnormalities in the brain tending to support an individual's complaints of migraine-related pain, it does not conversely follow that the absence of such evidence undermines such complaints." (Docket no. 12 at 13-14 (quoting *McCormick v. Sec'y of Health & Human Servs.*, 666 F. Supp. 121, 123 (E.D. Mich. 1987), *aff'd,* 861 F.2d 998 (6th Cir. 1988) and *Blevins-Bryant v. Colvin*, No. 3:14cv00237, 2015 WL 4498573, at *4 (S.D. Ohio July 23, 2015), *report and recommendation adopted*, No. 3:14cv00237, 2015 WL 4743034 (S.D. Ohio Aug. 11, 2015)).) However, the Sixth Circuit has held that an ALJ's reliance on a lack of objective medical evidence to discount the severity or existence of a claimant's allegedly disabling migraine headaches is not erroneous. *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (citing *McCormick*, 861 F.2d 998).

7

Further, the objective medical evidence is not the only evidence on which the ALJ relied in discounting Plaintiff's allegations regarding her headaches. The Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Social Security Ruling (SSR) 16-3p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). An ALJ's evaluation of an individual's symptoms must contain "specific reasons for the weight given . . . , be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *10 (S.S.A. Oct. 25, 2017).

Here, the ALJ considered Plaintiff's hearing testimony and her other subjective complaints regarding the location, duration, frequency, and intensity of her headaches, the precipitating and aggravating factors associated with her headaches, and the effects of her headaches. Specifically, the ALJ noted Plaintiff's assertion that she gets migraines three to four times a week during which she has 10/10 pain on the right side of her head and that they usually last all day but sometimes as little as thirty minutes. He noted Plaintiff's assertion that the migraines started after a 2012 motor

vehicle accident and that they were triggered by noise and light, such as fluorescent lights and bright computer and phone screens. The ALJ further noted Plaintiff's assertions that the migraines were "incapacitating" and caused nausea, vomiting, photophobia, and a need to lie down. (TR 21-22.)

The ALJ also considered Plaintiff's daily activities and found them to be inconsistent with a general finding of disability and inconsistent with an opinion made by an unknown medical provider that Plaintiff would be absent from work about four days a month due to headaches. (TR 26, 29.) The ALJ noted that at various times during the alleged disability period, Plaintiff worked on obtaining her GED; attended community college for culinary arts; did hair and makeup, for which she was hired by a beauty salon; and worked for seven months as a security guard. The ALJ reasoned that these activities demanded motivation, attention, concentration, standing, walking, and lifting, among other things. Plaintiff argues that she "is not denying that she manifests all these capabilities – *when she is not having a migraine*." (Docket no. 18 at 5 (emphasis in original).) The ALJ, however, did not suggest that Plaintiff has those capabilities during a migraine. Rather, the ALJ found that the fact that Plaintiff was able to perform activities that demanded such capabilities, like working as a security guard for seven months, suggested that Plaintiff's impairments were not as severe and limiting as she claimed, and it contradicted her allegations of disabling impairments. The ALJ also noted that Plaintiff admitted to not attending an SSI hearing because she wants to work, which the ALJ found to run directly contrary to her claim of disability.

The ALJ also relied on Plaintiff's conservative treatment and pattern of non-compliance with treatment in discounting her allegations regarding the frequency and severity of her headaches. (TR 24.) The ALJ noted that Plaintiff attempted pharmacological treatment but could

9

not tolerate Topamax and Imitrex, so she expressed a desire to use marijuana exclusively to treat her headaches. He also pointed out that Plaintiff sought treatment from a neurologist for her headaches, who recommended that she participate in physical therapy, but that Plaintiff never followed through with the neurologist's recommendation and did not seek any further specialized treatment. The ALJ also noted that Plaintiff's visits to the emergency room for complaints of head pain were related to acute injuries, not her allegedly disabling daily headaches. The ALJ further noted that Plaintiff hadn't sought any specific treatment related to migraines since April 2016. (TR 23.)

Plaintiff argues that the ALJ failed to comply with SSR 96-7p when he discredited Plaintiff for refusing to take Topamax or Imitrex and opting to treat her headaches with marijuana instead. (Docket no. 12 at 15-16.) To the extent that SSR 96-7p applies to Plaintiff's claims in this matter,[1] it provides that an ALJ may find a claimant's statements to be "less credible if the level or frequency of treatment is inconsistent with the level of complaints" as long as the ALJ considers the claimant's explanations or other evidence explaining his or her failure to seek or pursue regular medical treatment. SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996). Plaintiff argues that the "ALJ obviously did not comply with this ruling, offering no indication that he considered even the most obvious of reasons for [P]laintiff refusing to take Topamax or Imitrex." (Docket no. 12 at 16.) Plaintiff is incorrect. The ALJ explicitly considered Plaintiff's inability to tolerate Topamax and Imitrex at multiple points in the decision, including in the paragraph primarily at issue in this matter. (TR 22, 24.) The ALJ also explicitly considered Plaintiff's hearing testimony that the medications did not work, made her sleepy and irritable, and reduced her ability to care for her child. (TR 21-22.) Thus, the ALJ properly complied with the requirements of SSR 96-7p.

---

[1] SSR 96-7p has been rescinded and superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304, at *1.

Plaintiff also challenges the ALJ's reliance on the fact that Plaintiff received only conservative care and only once sought specialized care for her headaches. (Docket no. 12 at 16.) Plaintiff argues that "there is no evidence in this record that specialists would provide any different, or less conservative care, than [P]laintiff received from her primary care physician." (*Id.*) Indeed, the one specialist that Plaintiff saw for her headaches recommended conservative treatment in the form of physical therapy. But Plaintiff's argument misses the mark nonetheless.

This is because "when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004). "A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Id.* It follows, then, that a claimant's receipt of only conservative treatment and non-compliance with prescribed treatment are also reasonable factors to consider in evaluating complaints of disabling pain. *See Bentley v. Comm'r of Soc. Sec.*, 23 F. App'x 434, 435 (6th Cir. 2001) (conservative treatment); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 789 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (non-compliance with treatment).

Here, the ALJ noted Plaintiff's receipt of only conservative treatment for her headaches and her inability to tolerate the medications prescribed therefor, and he reasonably considered that when Plaintiff's providers recommended alternative treatment, Plaintiff failed to follow through, did not seek any other specialized treatment, and stopped seeking treatment altogether in April 2016. (TR 22-23, 24.) Plaintiff's failures to follow through with conservative treatment and to seek additional treatment to relieve the allegedly disabling pain caused by her headaches were logical and legitimate bases for consideration by the ALJ in determining that her headaches were not as severe as alleged. There is no error here.

11

The above discussion demonstrates that the ALJ applied the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) and set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints concerning the frequency and severity of her headaches, which reasons are properly supported by the record evidence in accordance with SSR 16-3p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court how he evaluated Plaintiff's headaches. The ALJ's assessment of Plaintiff's allegations regarding the frequency and severity of her headaches complies with the Regulations, is supported by substantial evidence, and should not be disturbed. Plaintiff's Motion should therefore be denied.

Additionally, as Defendant asserts, Plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments through step four of the sequential evaluation process. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Her*, 203 F.3d at 391. Thus, it is Plaintiff's burden to prove that she has a more restrictive RFC than that assessed by the ALJ. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (citing *Her*, 203 F.3d at 392). Here, the ALJ took into account Plaintiff's hearing testimony and her other subjective complaints regarding her headaches, and he incorporated functional limitations related thereto into Plaintiff's RFC. Specifically, in light of Plaintiff's testimony that her migraines were triggered by light and noise and that she experienced difficulty with the brightness of computer screens, the ALJ assessed that Plaintiff would need to avoid frequent exposure to sunlight or loud noises, limited Plaintiff to no more than occasional computer use, and assessed additional environmental and postural limitations. (*See* TR 20-22.) The ALJ's RFC assessment also provided that Plaintiff required work that would allow her to be off task up to 10% of an eight-hour workday due to the symptoms from her impairments and/or the ancillary effects of the treatment therefor. (TR 21.)

But while Plaintiff argues that the ALJ improperly discounted her allegations regarding the frequency and severity of her headaches, at no point in her initial Motion and brief does Plaintiff acknowledge the functional limitations assessed by the ALJ, argue that those limitations are insufficient, or indicate what additional functional limitations the ALJ should have assessed to account for the frequency and severity of her headaches. And when faced with the instant issue raised in Defendant's Motion, Plaintiff, in her reply brief, argues that the limitations assessed by the ALJ are insufficient but still does not specify or cite medical opinion evidence to show what additional limitations the ALJ should have assessed. (*See* docket no. 17 at 16-17; docket no. 18 at 5-6.) Plaintiff has therefore failed to meet her burden of showing that her headaches result in any more limitations than those assessed by the ALJ.

## VI.     CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 12) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 17).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991);

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 26, 2019            s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 26, 2019            s/ Leanne Hosking
                                Case Manager